Robert ROE and Jean Roe, Individually and as next Friends for John Roe, a minor, Plaintiffs–Appellants,

v.

CATHOLIC DIOCESE OF MEMPHIS, INC., and St. Paul's Catholic School, Defendants–Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

Dec. 31, 1996.

Application for Permission to Appeal Denied by Supreme Court June 2, 1997.

David J. Sneed, Robert B.C. Hale, Waring Cox, Memphis, for Plaintiffs–Appellants.

C. Thomas Cates, Melissa A. Maravich, Burch, Porter & Johnson, Memphis, for Defendants–Appellees.

CRAWFORD, Presiding Judge, Western Section.

This is a negligence case involving the supervision of a minor child by a preschool day care program. The plaintiffs, Robert, Jean, and John Roe, appeal from the order of the trial court granting summary judgment in favor of the defendants, Catholic Diocese of Memphis in Tennessee and St. Paul's Catholic School (hereinafter St. Paul's).[1] The trial court found that the acts alleged in the complaint were unforeseeable as a matter of law.

On July 16, 1993, Robert and Jean Roe filed a complaint individually and as next friend for their son, John Roe, against St. Paul's. The complaint avers the following facts. John Roe, a four-year-old boy, was enrolled in the preschool day care program at St. Paul's from August 1991 to May 21, 1993. On May 21, 1993, John Roe asked permission to go to the restroom which was located down the hall out of the sight and hearing of the teacher. While John Roe was in the restroom, Jimmy Doe, a four-year-old classmate, was allowed to leave the room to get a drink of water at the fountain near the restroom. Jimmy Doe entered the restroom and sexually assaulted and molested John Roe. Neither child was supervised by an adult while they were absent from the classroom.

The Roes allege that St. Paul's was negligent in its care and supervision with respect to John Roe, both under the common law and in violation of the minimum standards for child care established by the Tennessee Department of Education. The Roes also allege breach of contract, outrageous conduct, and intentional infliction of emotional distress.[2]

In its answer, St. Paul's admits that John Roe was enrolled in the preschool day care program on May 21, 1993, but denies any knowledge of an assault by Jimmy Doe. St. Paul's further denies that John Roe was improperly supervised and denies that it violated the minimum standards of care established by the State of Tennessee. St. Paul's asserts that no action of any of its employees or agents was a proximate cause of the alleged injury.

On June 7, 1994, St. Paul's filed a Motion for Summary Judgment relying upon the pleadings, a memorandum of law, and the affidavits of Mary Lynn Lashlee and Sister Mary Jerome Hannifin. The Roes filed a response and relied upon a memorandum of law and the affidavit of Sandra B. Turner. The motion was argued to the trial court on October 6, 1995.

For the purposes of the summary judgment motion, St. Paul's accepted the allegations of the complaint as true. St. Paul's claimed there were no disputed facts and conceded that it owed a duty of reasonable care with respect to the children under its control. However, St. Paul's argued that a sexual assault between two four-year-old boys was so unforeseeable that there was no duty to guard against it. St. Paul's also argued that such a sexual assault could not have been anticipated and the nature of the harm was unforeseeable, and, therefore, St. Paul's actions could not be considered the proximate cause of the injury. St. Paul's argued that the real question should be whether the school should have reasonably foreseen this type of conduct between four-year-old boys.

The affidavit of Sister Mary Jerome Hannifin, the principal of St. Paul's, stated that St. Paul's had never received a complaint or report concerning any sexual assault or misconduct among its preschoolers. She stated that St. Paul's had never received a complaint or a report regarding a sexual assault or sexual misconduct about John Roe or Jimmy Doe. She also claimed that St. Paul's was in compliance with the standards set by the Tennessee Department of Education at all times related to the alleged sexual assault.

St. Paul's also submitted the affidavit of Mary Lynn Lashlee, the substitute teacher for the classroom in question on May 21,

---

1. The Catholic Diocese of Memphis in Tennessee owns and operates St. Paul's Catholic School and its child care center.

2. The Roes withdrew the claims for breach of contract, outrageous conduct, and intentional infliction of emotional distress, and they were dismissed by the trial court.

1993. Ms. Lashlee stated that there were sixteen children present in the class on that day. In her affidavit, she related the following facts. John Roe had to await for Jimmy Doe to return to the classroom before he could go to the restroom. After John Roe went to the restroom, Ms. Lashlee allowed Jimmy Doe to return down the hall to get a drink of water, although she instructed him specifically not to enter the restroom. Ms. Lashlee stood in the doorway of the classroom to observe the children in the room and the two boys in the hallway. However, she left the door to attend to a crying child. Upon her return to the doorway, Ms. Lashlee observed both boys running down the hallway toward her. She was only absent from the doorway for two to three minutes. Like Sister Hannifin, Ms. Lashlee stated that she had never received a report of any sexual assault among St. Paul's preschoolers, including the two boys.

In opposition to the Motion for Summary Judgment, the Roes first assert that there is a disputed issue of fact because Ms. Lashlee misstated the distance to the door of the restroom and because she claimed that she was only absent from the door for two to three minutes. The Roes claim that the assault as alleged in the complaint, which has been accepted as true, could not have taken place within two to three minutes, and a jury could infer that the time of Ms. Lashlee's absence was longer. The Roes argue that the children were not properly supervised because they were not within the hearing or sight of Ms. Lashlee and because she did not know where Jimmy Doe was during her absence from the door. Finally, the Roes argue that the harm was foreseeable because one must only foresee the general nature of the harm not the specific nature of the injury. St. Paul's concedes that a scuffle in the restroom between two four-year-old boys is foreseeable. The Roes argue that this general type of interaction is the general manner in which the injury occurred, and therefore, the assault in question was foreseeable. They argue that the fact that the assault was sexual in nature only goes to the extent of the damages suffered by them.

In support of their position, the Roes submitted the affidavit of Sandra B. Turner. Ms. Turner was offered as an expert in early childhood education. In her affidavit, Ms. Turner stated that proper adult supervision required that the supervising adult be able to see or hear the child at all times. She also stated it was not proper adult supervision to allow more than one child to leave the classroom unattended. Ms. Turner opined that a teacher cannot properly supervise a child in a restroom down the hall by intermittently standing in the doorway of the classroom. Finally, Ms. Turner was of the opinion that the nature of the harm that can come to a four-year-old left unattended in the restroom is limited only to the imagination of the child.

The trial court agreed with St. Paul's and granted the Motion for Summary Judgment. The trial court found that the acts alleged in the complaint were not foreseeable as a matter of law. The Roes have appealed this order and present the following issue: whether the trial court erred in ruling as a matter of law that reasonable minds could not differ on whether the acts alleged by them were foreseeable.

A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. T.R.C.P. 56.03; *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993); *Dunn v. Hackett,* 833 S.W.2d 78, 80 (Tenn.App.1992). The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd,* 847 S.W.2d at 210. On a motion for summary judgment, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof; that is, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id.* at 210–211. In *Byrd,* the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is *no genuine issue of material fact,* the nonmoving party must then demon-

strate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211. (citations omitted, emphasis in original). Where a genuine dispute exists as to any material fact or as to the conclusions to be drawn from those facts, a court must deny a motion for summary judgment. *Byrd,* 847 S.W.2d at 211 (citing *Dunn,* 833 S.W.2d at 80).

■ We believe that summary judgment is appropriate in this case because the material facts are not in dispute. The Roes claim that a material dispute exists because the jury could infer from the nature of the assault that it took longer than Ms. Lashlee claims. However, they have not advanced any facts that support this suggestion. As stated above, the Roes must set forth *"specific facts* showing that there is a genuine issue of material fact for trial." *Byrd,* 847 S.W.2d at 211. The Roes also claim that Ms. Lashlee changed the distance to the restroom in her second affidavit, and that this discrepancy creates a material issue of fact. In her first affidavit, Ms. Lashlee stated that it was twenty feet to the door of the restroom. When she realized that she was mistaken, she submitted a second affidavit that changed the distance to forty feet. We do not believe that this discrepancy is a genuine issue of material fact. The Roe's own expert stated that adult supervision means within sight or hearing of the supervising adult. Both twenty feet and forty feet are within the sight and hearing of a reasonable person. This discrepancy in distance has no bearing on the legal issues in dispute and, therefore, is not a material fact.

■ In order for there to be a cause of action for common law negligence, the following elements must be established: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause.

*McClenahan v. Cooley,* 806 S.W.2d 767, 774 (Tenn.1991). The only element in issue in the case *sub judice* is proximate cause. In its brief, St. Paul's argues that it did not breach the duty of care and that the actions of Jimmy Doe were an intervening cause of John Roe's injuries. However, we will not consider these issues because our conclusion concerning foreseeability is dispositive regardless of these issues, and because they were not properly presented for our review. T.R.A.P. 13(b).

■ In Tennessee, there is a three-pronged test for proximate causation: (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is *no rule* or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence. *McClenahan,* 806 S.W.2d at 775. In the instant case, the issue is mainly one of the third prong: foreseeability.

■ The Roes argue that summary judgment was inappropriate because foreseeability is a question of fact for determination by the jury. It is true that courts in Tennessee generally hold that summary judgment is inappropriate in negligence cases. *Gonzales v. Alman Constr. Co.,* 857 S.W.2d 42, 45 (Tenn.App.1993). Proximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome. *McClenahan,* 806 S.W.2d at 775. In *Doe v. Linder Constr. Co.,* 845 S.W.2d 173, 183 (Tenn.1992), the Tennessee Supreme Court addressed summary judgment in negligence cases: "If, as a matter of law, the plaintiff has failed to allege or prove facts sufficient to establish notice, the existence of the duty to act, breach of the duty, or proximate cause, dismissal, summary judgment, or a directed verdict would be appropriate." (quoting *Tedder v. Raskin,* 728 S.W.2d 343, 349 (Tenn.App.1987)).

■ The foreseeability requirement is not so strict as to require the tortfeasor to

foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred. *McClenahan*, 806 S.W.2d at 775. The fact that an accident may be freakish does not per se make it unpredictable or unforeseen. It is sufficient that harm in the abstract could reasonably be foreseen. *Id.*

In *McGaughy v. City of Memphis*, this Court discussed the meaning of foreseeability:

> "If there is a substantial likelihood that certain conduct, when pursued by the defendant, will result in some appreciable harm to the plaintiff's person, then the defendant, if he so conducts (sic), cannot escape liability on the ground that he could not foresee the precise manner in which the harm would occur, nor the exact nature of the harm, nor the full extent of such harm. What must be foreseen, in order to establish negligence, is 'harm in the abstract, nor harm in the concrete.' The defendant need not foresee 'that an injury should occur in the exact way or to the same extent as that which did occur.' He need only foresee that some injury of a like general character is not unlikely to result from failure to use care." Jeremiah Smith, Legal Cause in Actions of Tort, Selected Essays on Law of Torts, 690.

> "It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye. *Washington & G.R. Co. v. Hickey*, 166 U.S. 521, 526, 527, 17 S.Ct. 661 [663, 663] 41 L.Ed. 1101, 1103 [1103], 1 Am.Neg.Rep. 758." Holmes, J., in *Munsey v. Webb*, 231 U.S. 150, 156, 34 S.Ct. 44, 45, 58 L.Ed. 162, 166.

823 S.W.2d 209, 215 (Tenn.App.1991) (quoting *Spivey v. St. Thomas Hospital*, 31 Tenn. App. 12, 211 S.W.2d 450, 456 (1947)).

We agree with the trial court that the acts alleged in the complaint are unforeseeable as a matter of law. The alleged acts would be considered vile and reprehensible between two adults, but between two four-year-old boys, the alleged acts are even more shocking and appalling. We do not believe that a reasonable person would ever foresee this type of behavior between boys of that age. The possibility of an accident of this general character could not have been foreseen by St. Paul's. St. Paul's presented affidavits showing that a sexual assault had never occurred in the school, and that the school had no reason to suspect this behavior from Jimmy Doe. Moreover, we should consider the fact that the teacher could not reasonably foresee that a child that had just used the restroom facilities would return to the restroom instead of the classroom after getting a drink of water in the school hall.

■ The Roes argue that the trial court interpreted the question of foreseeability too narrowly. The Roes claim that scuffles or pushing and shoving between two preschool boys are foreseeable, and therefore, the injury in this case is foreseeable. However, the injuries that result from a scuffle are different from the injuries alleged in the complaint. The Roes alleged severe and irreparable emotional and physical damage. These are the types of injuries that result from a sexual assault, not a scuffle or pushing and shoving. We believe that these types of injuries, and the acts that produced them, were unforeseeable to St. Paul's.

We conclude that St. Paul's could not have foreseen the "general manner in which the injury ... occurred." *McClenahan*, 806 S.W.2d at 775. The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellants.

FARMER, J., and HEWITT P. TOMLIN, Jr., Senior Judge, concur.